# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SHAYRA LOPEZ-CRUZ,

     Plaintiff,

     v.

FPV & GALINDEZ, PSC, ET AL.,

     Defendants.

**Civil No. 11-1774 (SEC)**

## OPINION AND ORDER

Before the Court are the defendants' motion for summary judgment (Docket # 28), the plaintiff's opposition thereto (Docket # 33), and the parties' respective replies (Dockets # 37 and 49). After reviewing the filings and the applicable law, the defendants' motion is **GRANTED**.

### Factual and Procedural Background

Shayra López-Cruz ("Plaintiff") filed this suit against her former employer, FPV & Galindez, CSP ("FPVG"), and Julio Galindez ("Galindez") (collectively, "Defendants"), alleging gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; Puerto Rico Law No. 80, P.R. Laws Ann. tit. 29 §§ 185a et seq.; Puerto Rico Law 100, P.R. Laws Ann. tit. 29, §§ 146 et seq.; and Puerto Rico Law 69, P.R. Laws Ann. tit. 29, §§ 1324 et seq. Docket # 1. Plaintiff alleges that she was terminated because of her gender and retaliated against for objecting to Defendants' discriminatory practices and for claiming better working conditions for female employees. Id. at 2.

On May 8, 2012, Defendants moved for summary judgment, arguing that Plaintiff failed to establish a prima facie case of gender based discrimination.  Docket # 28, p. 10. They further assert that Plaintiff has not adduced evidence that their articulated reason for her dismissal is a mere pretext for discrimination. Id.; Docket # 28-10, p. 15.   After reviewing the filings, the relevant uncontested facts are as follows.[1]

In November 2004, Plaintiff began working for FPV & Co., PSC ("FPV"), a certified public accountants firm, as a "Staff Auditor". Statement of Uncontested Facts ("SUF"), Docket # 28-1, ¶ 1.[2] Rafael Pérez Villarini ("Villarini") and Marcos Claudio ("Claudio") were the only partners of FPV.  Id. ¶ 5. FPVG is the result of a merger between FPV and Galindez CPA Group, PSC ("Galindez Group"), a firm wholly owned by Galindez. SUF ¶¶ 4-5.  The two entities merged in January 2008. Id.  For Galindez, the merger represented an opportunity for FPV and Galindez Group to complement their practices with the established organizational structure of the other.  Id. ¶ 6.

Prior to the merger, FPV and Galindez Group had worked together in several professional engagements.  Id. ¶  8.  Plaintiff had participated in some of these engagements, where personnel from Galindez Group supervised her.  Id.  During this period, FPV and Galindez's employees were also attending professional seminars together and partaking on other special occasions. Id. ¶ 10. While attending one of these seminars Plaintiff affirms that

---

[1] Primarily, the facts are obtained from Defendants' statement of undisputed facts (Docket # 28-1) and Plaintiff's statement of additional facts (Docket # 34), at times in the exact words without using quotations marks.

[2] Plaintiff filed a motion to strike for failure to comply with Local Rules 7(c) and 56(d).  Docket # 40. On June 8, 2012, the Court denied the motion to strike, but stated that it would consider Plaintiff's Rule 56 objections when ruling upon the summary judgment motion.  Docket # 43.  The Court has evaluated Plaintiff's objections and, without making a ruling on this matter, will disregard the statements objected by Plaintiff.

she heard Galindez say, in front of her and other FPV employees: "[t]hat was why he contracted males and not females, since he preferred working with the male gender." Id. ¶ 11.[3]

Under FPV's organizational structure, the Auditors in Charge mostly worked under the direct supervision of the partners. Id. ¶ 19. As a result of the merger, FPVG implemented the organizational structure that existed in Galindez Group, where the Staff Auditor would report to an Auditor in Charge, who would report back to a Manager, who would in turn report to a Partner. Id. ¶ 20. The individuals that were assigned as Managers at FPVG came from Galindez Group. Id. The merger thus brought new ways of doing things, less exposure to the Partners, and supervisors that came from Galindez Group. Id. ¶¶ 20, 21 and 22.

Shortly after the merger, Plaintiff was assigned to work in an engagement at one of FPVG's clients, Pavía Hospital. Id. ¶ 26. After a day of work, Galindez greeted Plaintiff at the office and asked her how was everything going with the Finance Director for the Hospital. She replied: "she's a bitch, but I'm a bigger bitch than she is." Id.[4] Galíndez stated that he was not used to have a subordinate speak to him like that. Id. ¶ 27.[5]

---

[3] Defendants dispute the specific content of this statement. In accordance with Galindez's testimony, Defendants aver that Galindez "might have made a comment within those lines, but more in the context that 'it is easier to hire men.'" SUF ¶ 13.
[4] Plaintiff does not admit, deny or qualify this statement of fact by a record citation as required by Local Rule 56(c). She only says that "Galindez did nothing about the alleged statement made by López, apart from telling the other partners of the firm." Plaintiff's response to SUF ("RSUF"), Docket # 34, ¶ 26. As such, the Court deems Defendants' statement to be admitted.
[5] Plaintiff does not admit, deny or qualify this statement of fact by a record citation as required by Local Rule 56(c). Plaintiff, however, disputes this fact to the extent she generally contends that it is a conclusory opinion that merely reflects Galindez's perception and not a factual contention that is subject to a direct response. RSUF ¶ 27.

On another occasion, while working at the Pavía Hospital, a lamp fell on Plaintiff's laptop, breaking it.  Id. ¶ 29.  Héctor Vázquez ("Vázquez"), a manager at FPVG and Plaintiff's superior, demanded in an ill-mannered fashion that she turn in her work on time even though she could not because of the accident. Id. ¶ 29. Vázquez came from Galindez Group and was assigned as manager at FPVG.

Later, while Plaintiff was assigned to hospital engagements outside of the metropolitan area, Vázquez required Plaintiff to work during late night hours (between 8:00 pm and 9:00 pm). Id. ¶ 33.  Plaintiff complained to Vázquez that the walk to her car through a dark and isolated parking lot was dangerous since she was a woman, and that there were reports of co-workers who had been robbed and cars that had been broken into. Id.  He simply replied that those were the conditions of the job, and that she had to remain at the site until she completed her duties. Id.  ¶ 34.  This condition was imposed on all personnel, including her male counterparts. Id. ¶ 35.[6]  In fact, in her deposition Plaintiff testified that Claudio and Villarini's response to her complaints on this issue were the same as Vázquez's, that is, that those were the conditions of the job. Docket # 28-2, pp. 52-53.

Sometime around April or May 2009, Plaintiff participated in a gathering or mixer at the offices of FPVG.  SUF ¶ 44. Traditionally, the firm would have these gatherings with all its personnel in order to celebrate the end of the tax season.  Id. Food and alcohol were served. Id.

At the work gathering, Plaintiff told Claudio, Galindez, and other co-workers that FPVG's supervisors had no consideration in their treatment towards women in the office;

---

[6] Although Plaintiff denied this statement, it was supported by a citation to Plaintiff's deposition and it was not properly controverted.  See SUF ¶ 35; RSUF ¶ 35; and Docket # 28-3, pp. 46-9.

that they were very aggressive when addressing them; and that FPVG should not make women leave at late hours because it was unsafe. Id. ¶ 45; Plaintiff's response to SUF ("RSUF"), Docket # 34, ¶ 45; Docket # 38-2, pp. 81-85. Plaintiff asserts that Galindez responded: "That's why I only contract men. I like to work with men because women are difficult." SUF ¶ 46; RSUF ¶ 46; Docket # 28-2, p. 85.

On June 3, 2009, Vázquez gave a written reprimand to Plaintiff due to an incident where a group of male and female employees from the auditing department was gathered during working hours, jesting and joking loudly about matters that were not work related. SUF ¶¶ 37-8; Docket # 28-3, p. 57; Exhibit X.[7] According to the e-mail sent by Vázquez to Plaintiff, when he approached the group and ordered them to disperse, Plaintiff took it upon herself to challenge his authority, confronting him in an insubordinate and defiant manner. Id. Plaintiff replied to the written reprimand by sending an e-mail, addressed to Vázquez and the partners, stating her version of the facts and alleging that Vázquez behaved unprofessionally. Id. ¶ 39.

In December 2009, FPVG had a Christmas party at a restaurant. SUF ¶ 50. Plaintiff and other employees took individual pictures with Claudio and Villarini. Id. On more than one occasion, Galindez heard Plaintiff announce that: "[t]his photograph is only for the people from FPV [referring to the firm before the merger with the Galindez Group]." Id.

---

[7] Plaintiff opposed this statement, alleging that the written reprimand was not properly authenticated. Defendants, however, submitted an affidavit from Vázquez complying with this requirement. The Court, therefore, admits Defendants' statement. See FED. R. CIV. P. 56(c); Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, n.3 (1st Cir. 2010); Carmona v. Toledo, 215 F.3d 124 (1st Cir. 2000).

Galindez was bothered by Plaintiff's comments, since it had already been two years since the merger. Id. ¶ 51.

Later, in April 2010, Plaintiff and other employees asked Claudio and Villarini to come to the second floor of the office, because they had gifts for them. Id. ¶ 52. The gifts were a framed picture of the photographs they had taken during the Christmas party. Id. When Claudio and Villarini asked what they had for Galindez, they said: "there's nothing for Julio, this is for the good partners." Id. ¶ 53. Galindez was informed of this incident by Villarini, who seemed to be upset about the whole deal. Id. ¶ 54. Plaintiff admitted that when Claudio received his gift he informed her that he was not comfortable with the fact that Galindez was being intentionally excluded. Id.

As per Galindez's account, the previous incident occurred on a Thursday and he endured the ordeal for the rest of the week and thought about it during the weekend. Id. ¶ 55. That Monday he met with Claudio and Villarini to discuss the gift incident, since he perceived that Plaintiff's attitude could threaten their business relationship and, consequently, the office. Id. Galindez stated in his deposition that he came up with the idea of firing Plaintiff, but since all formal disciplinary decisions had to be approved by all the partners, the matter was thus discussed among all of them. Ultimately, they all agreed on the decision to dismiss her. See Docket # 38-5, p. 76; Docket # 50-6, pp. 42-4; Docket # 50-8, p. 23. When Plaintiff asked Claudio about the reasons for her termination, he first told her he had no explanation. Upon Plaintiff's insistence, however, he later told her that he simply had to terminate her because Galindez did not want her working at the firm anymore. See Docket # 34-3, p. 112.

Since the merger in January 2008, FPVG hired twenty individuals of which ten were females.  SUF ¶ 68.  After Plaintiff's discharge in April 2010, FPVG's auditing department had a total of thirteen positions at the non-managerial, supervisory level.  Id. ¶ 71. Of these, seven were occupied by females. Id.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).  In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994).  At this stage, the court construes the record in the "light most flattering" to the nonmovant, resolving all reasonable inferences in that party's favor. Soto-Padro v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012).

The summary judgment inquiry is grounded in the factual evidence available, since "[o]ne  of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact at issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted).  "A  factual issue is 'genuine' if 'it may reasonably

be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (quoting Garside, 895 F.2d at 48). A material fact, in turn, is one that may affect the outcome of the suit under the governing law. Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994).

At any rate, to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).  Accordingly, once the party moving for summary judgment has established an absence of material facts in dispute, and that judgment is proper as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Mendez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994)). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue . . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence"); Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) (holding that "[t]he evidence illustrating the factual

controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve").

**Applicable Law and Analysis**

*Title VII's Claim*

Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of … sex …" 42 U.S.C. § 2000e-2(a)(1). Therefore, to establish a claim for sex discrimination under this statute, "a plaintiff must show that he/she experienced an adverse employment action taken on the basis of his/her gender." Ryan v. Greater Lawrence Technical School, __ F.Supp.2d __, No. 11-10023, 2012 WL 4795660, at * 9 (D. Mass. Sept. 14, 2012) (citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).

When considering circumstantial evidence of sex discrimination, Courts apply the McDonnell Douglas three-stage, burden-shifting framework. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46 (1st Cir. 2000). Under this framework, the employee must first establish a prima facie case of gender-based discriminatory discharge under Title VII, by showing that she (1) was within a protected class; (2) possessed the necessary qualifications and adequately performed her job; (3) was nevertheless dismissed; and (4) her employer sought someone of roughly equivalent qualifications to perform substantially the same work. Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010). If a plaintiff establishes a prima facie case of discrimination based on gender, the burden of production shifts to the employer, who must articulate a legitimate,

nondiscriminatory reason for its action. Id. If the employer meets its burden, the focus shifts

back to the plaintiff, who must then show, by a preponderance of the evidence, that the

employer's articulated reason for the adverse employment action was pretextual and that the

true reason was discriminatory. Id.

Although the parties dispute whether Plaintiff can meet the second and fourth

elements of a prima facie discrimination case, most of their arguments are directed to

whether Defendants' articulated reason for her termination was a pretext. In a similar

situation, the First Circuit stated:

> We believe it both expeditious and appropriate under these circumstances to
> 'assume that [the plaintiff] has made out a prima facie case in order to move
> on to the real issues in the case.' Indeed, we have observed that, '[o]n
> summary judgment, the need to order the presentation of proof is largely
> obviated, and a court may often dispense with strict attention to the burden-
> shifting framework, focusing instead on whether the evidence as a whole is
> sufficient to make out a jury question as to pretext and discriminatory animus.'
> Gómez-González, 626 F.3d 654, 662 (1st Cir. 2010) (citing García v. Bristol-
> Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008); Fennell v. First Step
> Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996)).

Therefore, the Court turns to the second and third stage of the McConnell Douglas

Framework.

At the second stage, Defendants have "the burden of production –as distinguished

from the burden of proof– … to articulate a legitimate, nondiscriminatory basis for its

adverse employment action." Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 140

(1st Cir. 2012). Defendants proffered as their nondiscriminatory reason for Plaintiff's

termination that FPVG considered her attitude towards the new managerial configuration as

an "insubordinate and … divisive element that fostered an inappropriate job environment,

which threatened the business enterprise." Docket # 28-10, p. 16.  Plaintiff concedes that

this reason is sufficient to meet the burden at the second stage.  Therefore, the Court turns to the third stage of the burden-shifting test.

For the third and final phase of the burden-shifting framework, the Court focuses on whether, after evaluating all of the evidence on the record in the light most favorable to Plaintiff, she has raised a genuine issue of fact as to whether the termination was motivated by gender discrimination. See Acevedo-Parrilla, 696 F.3d at 140.  If there is sufficient evidence in the record from which a jury could infer that the proffered reason for firing the employee was pretextual, and that the decision was made because of discriminatory animus, summary judgment is inappropriate.  Santiago-Ramos, 217 F.3d at 55. In order to meet this burden, Plaintiff must offer "some *minimally sufficient* evidence, direct or indirect, both of pretext and of discriminatory animus." Acevedo-Parrilla, 696 F.3d at 140 (emphasis in the original) (citing Mesnick v. General Elec. Co., 650 F.2d 816, 825 (1st Cir. 1991)).

Plaintiff alleges that the record contains plenty of evidence in her favor to prove that the nondiscriminatory reason provided by Defendants is pretextual. Docket # 33, pp. 8-22. She tries to prove pretext arguing that (1) Defendants deviated from their standard business practice to terminate her; (2) Defendants treated her differently from other similarly situated employees; (3) Galindez's stereotyping remarks about women are not stray remarks; and (4) the record reveals four different versions of the reasons behind her termination that are in total contradiction among themselves, which is evidence of mendacity.

When assessing a charge of pretext, Plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  It is well

settled that, in the absence of a "smoking gun of evidence," a party may demonstrate pretext through several methods, to wit, that the employee was treated differently than other similarly situated employees; that discriminatory comments were made by the decisionmaker or those in a position to influence the decisionmaker; that there are weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's legitimate reasons; or, among others, through a showing that an employer has deviated inexplicably from one of its standard business practices. Meléndez-Ortiz v. Wyeth Pharmaceutical Co., 775 F. Supp. 2d 349, 359 (D.P.R. 2011) (citing Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 446 (1st Cir. 2009); Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003); Santiago-Ramos, 217 F.3d at 55)); see also Kouvchinov v. Parametric Technology Corp., 537 F.3d 62, 68 (1st Cir. 2008).

The Court thus addresses whether evidence of pretext exists, taking into consideration that courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent. Id.

A. *Defendants' standard business practices*

The First Circuit has stated that "pretext can be demonstrated through a showing that an employer has deviated inexplicably from one of its standard business practices." Kouvchinov, 537 F.3d at 68. "It is the Plaintiff's obligation to adduce competent evidence establishing the standard policy or practice." Venable v. T-Mobile U.S.A., Inc., 603 F. Supp. 2d 211 (D. Me. 2009); see also Kouvchinov, 537 F.3d at 68-69. Plaintiff then must first show there is a trialworthy issue as to whether such a standard practice existed. Zapata v.

Univisión PR, No. 9-1987, 2011 WL 4625951, * 13 (D.P.R. Oct. 3, 2011); see also Kouvchinov, 537 F.3d at 68-9.

Plaintiff alleges that Defendants failed to follow their own policies and procedures for employment termination.  Specifically, she relies on Diaz's deposition to allege that FPVG follows a progressive discipline approach to termination where a verbal warning is given first and then the discipline escalates to a formal written warning, suspension and termination.  Plaintiff's additional uncontested facts ("ASUF"), Docket # 34, ¶ 39. This argument is without merit.

It is true that Diaz did testify that the "progressive discipline" approach to termination was followed by FPVG.  Docket # 38, p. 79.  She also testified that in the dismissal process of three male auditors in the months prior and after Plaintiff's employment termination, formal memos and other documents were included in these employees' files.  ASUF ¶ 43.  But she also admitted that she does not intervene in the disciplinary process of the employees, aside from filing related documents, because as Office Manager she is in charge of managing all personnel files.  Id. Therefore, even though Diaz may have knowledge of the content of the employees' files, her testimony, coming from someone who neither participated nor had personal knowledge of the actual disciplinary process at FPVG, "does not hint as, much less establish, a corporate policy or practice of the kind limned by the plaintiff," nor is it "enough to establish a trialworthy issue as to the existence of a policy or practice." Kouvchinov, 537 F.3d at 69.  That is, Plaintiff failed to establish that there was a progressive discipline approach at FPVG and that Defendants deviated from it.

Even if the "progressive discipline" approach were a standard practice at FPVG, Diaz's testimony would still be insufficient to establish what was the nature and scope of this procedure and whether it was a standard practice or a flexible or discretionary approach from which there is, by definition, no standard practice from which to deviate.  See id.[8]

### B.  Differential treatment

"To successfully allege disparate treatment, a plaintiff must show 'that others similarly situated to him in all relevant respects were treated differently by the employer.'" Acevedo-Parrilla, 696 F.3d at 144 (quoting Kosereis, 331 F.3d at 214).  Specifically, "that males were similarly situated and that she was treated differently." Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532 (1st Cir. 2002); see also Trans World Airlines v. Hardison, 432 U.S. 63, 71 (1977) ("[S]imilarly situated employees are not to be treated differently solely because they differ with respect to race, color, religion, sex, or national origin.").

Plaintiff alleges that "the merger of the two offices brought with it a differential treatment from the part of the new male supervisors and Plaintiff perceived this differential treatment as discriminatory."   Docket # 33, p. 14-15. She further contends that Vázquez treated her in a harsh manner "because she was a woman and could not accept that as a

---

[8] Plaintiff also points to testimony from Galindez that is similarly unhelpful to her cause.  Galindez testified that all written formal disciplinary warnings must be approved by all partners prior to including them in the personnel file of the employee.  ASUF ¶ 40.  Plaintiff alleges that no formal written warning were given to her and that no disciplinary action was taken prior to her dismissal. Id. at 41. Galindez's statement cannot be interpreted as to establish a policy or practice requiring a written warning or sanction prior to dismissal.  It only serves to prove that if said warning was made in writing and filed in the employee's personnel file, it had to be previously approved by all partners. Thus, Plaintiff's inference is incorrect and the only permissible inference from Galindez's testimony is that the letters of admonishment in Plaintiff's file regarding the June 3, 2009 incident (Docket # 28-7, Exhibits X and XII) must have been approved by all partners or would have not been in her personnel file.  Docket # 38, p. 82.

woman she could be assertive and express her opinion." Id.  In support of this contention,

she points to incidents in which she and other female auditors of the firm protested to

Vázquez for requiring them to work long hours into the night at the client's offices, even

though it was dangerous, and they were afraid of walking alone through the parking lot. See

SUF ¶ 33. Plaintiff also pointed to Vázquez's aggressive behavior when addressing her and

other women at FPVG, and she perfunctorily suggests that differential treatment was also

evident in the application of different policies and procedures to the three male employees

that were terminated before and after her. Docket # 33, p. 16. This argument falls way short.

At the outset, there is no evidence that she (or only female employees) was the only

employee required to work long hours at the client's offices, or that she (or only female

employees) was the only auditor that had to walk at night through a parking lot. Quite the

opposite is true: Plaintiff testified at her deposition that sometimes she was alone working in

these engagements but in other instances she was with other employees. She also admitted

that Vazquez's demands to leave after eight or nine at night were the same for all other

employees, male or female, and not only for her. Docket # 28-3, pp. 46-7.[9]  She even

testified that Vázquez never made any comments or references to her gender, and that he

always replied that those were her duties, and that she had to comply with them.  Id. at 47-

49. She also stated that other co-workers, without specifying their gender, were robbed and

their cars broken into, thus admitting that all employees were at some degree of risk.  Id.

Moreover, when Plaintiff complained to Claudio and Villarini for having to leave at late

_____

[9]   Plaintiff denies this statement, but provides no record citation in support of her position.  See
Docket # 34, pp. 10-11.

hours, they stood by Vázquez's stance, asserting that those were the conditions of the job, and that all employees were exposed to the same situation.  Docket # 28-3, pp. 52-3.[10]

The same holds true with regard to Vázquez's aggressive behavior towards her and other women at FPVG.  Although Plaintiff does not specify, the Court assumes that she is referring to the incident where a lamp fell from the ceiling and broke her computer while working on the Pavía Hospital engagement and/or to the incident in which a group of employees from the auditing department were gathered during working hours, jesting and joking about matters that were not work related.  In both situations, Vázquez allegedly treated her in a severe manner.  Plaintiff, however, never claimed or provided evidence of any incident in which a male employee was treated better by Vázquez during a similar incident. The evidence provided does not support Plaintiff's contention.  In any event, because Plaintiff does not elaborate on this argument, the Court deems it waived.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Finally, Plaintiff briefly suggests that differential treatment was also evident in the application of different policies and procedures to the three male employees that were terminated before and after her.  The Court already determined that the evidence provided was insufficient to hint or establish a corporate policy or practice from which FPVG may have deviated.  In addition, Plaintiff has not supported this argument with a citation to any

---

[10]  Even though Plaintiff qualifies this statement, she provides no record citation in support of her position.  See Docket # 34, p. 11.

evidence on record about the reasons for the dismissal of these male employees, or with  the employees' personnel files, termination letters and/or depositions from which to conclude that they were similarly situated employees.

### C.  Discriminatory comments or stray remarks

Stray remarks, standing alone, are normally insufficient to establish either pretext or discriminatory animus.  Ortiz-Rivera v. Astra Zeneca LP, 596 F.Supp. 2d 231, 246 (D.P.R. 2009) (citing Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002)).  In combination with other evidence, however, they may permit a jury reasonably to determine that an employer was motivated by a discriminatory intent.  Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001) (citations omitted).  In evaluating allegedly discriminatory remarks made by a decisionmaker, the First Circuit has considered their temporal proximity and causal connection to the decision to discharge.  Acevedo-Parrilla, 696 F.3d at 128; see also McMillan v. Massachusetts Soc'y for Prev. of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir. 1998) (Finding that while 'stray remarks' may be material to the pretext inquiry, "their probativeness is circumscribed if they were made in a situation temporally remote from the date of the employment decision, or were not related to the employment decision in question").

Plaintiff points to two remarks made by Galindez to demonstrate pretext.  Defendants contend that the comments were "stray remarks" insufficient to establish either pretext or discriminatory animus. The first remark was made in 2007, prior to the merger and at the end of a professional seminar held at a restaurant.  Plaintiff alleges that Galindez said in

front of her and other FPV employees: "[t]hat was why he contracted males and not females, since he preferred working with the male gender." SUF ¶ 11.

Like her deposition testimony on this matter, this statement is vague, lacking in specifics and context. The only concrete information on the record is that it was made after a professional seminar held at a local restaurant. Further, this comment was made at some point in 2007, that is, before the merger of FPV and Galindez Group. At the time Galindez was not a decisionmaker at FPV, and there is no evidence that may causally connect this remark to the eventual decision to discharge Plaintiff. More importantly, since the comment was made at least two years and a half before Plaintiff's termination, it is simply insufficient to establish a causal connection based on temporal proximity. See Santiago-Ramos, 217 F.3d at 55 (remarks within two weeks of discharge probative of pretext); McMillan, 140 F.3d at 301 (remoteness heightened where at least one of three remarks occurred several years before challenged employment action); Calero-Cerezo v. United States Dept. of Justice, 355 F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity"); Colón-Fontanez v. Municipality of San Juan, 671 F. Supp. 2d 300, 333 (D.P.R. 2009) (one year is not close enough to link actions to any protected activity).

The second remark took place at a gathering sometime around the months of April and May 2009.  SUF ¶ 44.  Traditionally, FPVG would make these gatherings, where food and alcohol were served, with all its personnel in order to celebrate the end of the tax season.  Id. At the work gathering, Plaintiff told Claudio, Galindez and other co-workers, that their supervisors had no consideration towards the women in the office; that they were

very aggressive when addressing them; and that FPVG should not make women leave the engagements at late hours because it was not safe for them.  Id. ¶ 45; RSUF ¶ 45; Docket # 28-2, pp. 81-85. In response, Galindez said: "[t]hat's why I only contract men.  I like to work with men because women are difficult." SUF ¶ 46; RSUF ¶ 46; Docket # 28-2, p. 85.

The Court acknowledges that, drawing all inferences in the light most favorable to Plaintiff, the remark was made by Galindez, a decisionmaker at FPVG. But the fact remains that as explained by Galindez, Claudio and Villarini, the decision to terminate an employee had to be approved by the three of them –partners and decisionmakers at FPVG–, and there are no allegations of possible discriminatory animus from Claudio or Villarini. This remark does not strictly involve the employment decision at issue, and Plaintiff has failed to provide evidence that can causally connect the comment with the termination decision.  Moreover, the remark was made a year before the decision to terminate her.  Plaintiff has thus failed to prove that Galindez's remark was causally connected to her termination.  On the other hand, there were other women auditors at FPVG, but the only other employees that were terminated before or after Plaintiff, were *all* males.  Threfore, in light of the particular facts of this case and the evidence on record, this was an isolated remark too far in time to raise a genuine issue of material fact absent additional evidence. In any event, one stray remark cannot be sufficient to support a gender discrimination case.

### D. Alleged disbelief of the nondiscriminatory reason

Plaintiff alleges that there is evidence on record of four different reasons given by Defendants for her employment termination, to wit: (1) that there is no reason for her termination; (2) that Galindez did not want to work with her anymore; (3) work shortage;

and (4) insubordination and lack of acknowledgment of the new managerial configuration. Docket # 33, p. 10. According to Plaintiff, having four contradictions, together with inconsistent statements from Defendants' managerial employees on this regard, is the kind of contradiction that, based on Reeves v. Sanderson Plumbing, 530 U.S. 133, 147-8 (2000), "qualifies as evidence of mendacity that can lead a reasonable jury to conclude that the alleged nondiscriminatory reason put forth by Defendants in this case is unworthy of credence." Docket # 33, p. 12.

In Reeves, the Supreme Court resolved a conflict among the Courts of Appeals as to whether a plaintiff's prima facie case of discrimination combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, was adequate to sustain a finding of liability for intentional discrimination. 530 U.S. at 140.  The Court stated:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. *In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.* Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.' … Thus, a plaintiff's prima face case, combined with sufficient evidence to find that the employer's asserted justification is false, *may permit* the trier of fact to conclude that the employer unlawfully discriminated.
>
>     This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law *if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the*

*employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.* Id. at 147-8. (emphasis in the original) (emphasis added).

The Court disagrees with Plaintiff's contention. First, all four reasons are not in total contradiction among themselves. Plaintiff alleges that, on the date of her dismissal, Claudio did not tell her why her employment was being terminated, arguing that he did not give a reason because there was none.  According to Plaintiff, not providing a reason at the moment of her termination creates a contradiction between this and the other reasons reflected by the evidence on record. Docket # 28-2, p. 108. We disagree with Plaintiff because not giving reasons for a dismissal cannot be considered inconsistent or in contradiction with one or more reasons later provided.  See Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002) (finding probative of employer's credibility the fact that their explanation was not contradicted by contemporaneous documents or statements –including not giving a reason– made at termination). The Court thus turns to the other three alleged reasons.

The second and fourth reasons alleged by Plaintiff are not inconsistent among themselves either. That Galindez did not want to work with Plaintiff anymore, as stated by Claudio, is a more general way of expressing that Galindez wanted her dismissed because of her insubordination and lack of acknowledgment of the new managerial configuration, the fourth reason and Defendants' alleged nondiscriminatory reason for Plaintiff's termination. Claudio only mentioned that Galindez did not want to work with her anymore. But he did not explain why Galindez did not want her at FPVG.  If Claudio had provided a reason and

that reason would have been different from Defendants' nondiscriminatory reason, then, and only then, would there be a possible inconsistency or contradiction in the evidence.

The third reason, "lack of work," merits a more careful analysis. After her discharge, Plaintiff filed a petition for unemployment benefits before the Puerto Rico Department of Labor ("Department"). SUF ¶ 65. As a result, FPVG received a questionnaire with a typewritten portion that stated that the reason for Plaintiff's separation had been "lack of work." Id.[11] Even though it already contained this information, the document required FPVG to state the reason for Plaintiff's unemployment. FPVG, by way of Diaz, wrote the same reason, "lack of work", in the Department's document. Id. ¶ 66. Defendants posit that they wrote "lack of work" in this document because FPVG did not want to prevent Plaintiff from receiving the unemployment benefits she had requested, and they assumed that the Department would grant Plaintiff's request, if they simply restated the pre-typewritten information provided within the same questionnaire. Docket # 28-10, p. 17; Docket 28-6, p. 25; SUF ¶ 66. Diaz testified and Plaintiff admitted, however, that there was no such scarcity of work at FPVG.

In addition, Diaz testified in her deposition that Claudio had told her to state as the reason for dismissal the one already included in the document.  Docket # 34-6, p. 24. Claudio, however, testified that he did not know who provided Diaz with the information to complete the document. Docket # 28-6, p. 38. Plaintiff contends that the contradictory reason and the inconsistent testimony of Diaz and Claudio are evidence of mendacity from

---

[11] It is not clear from the record if the pre-typewritten information was provided by Plaintiff to the Department when filing the petition for unemployment benefits.

which a trier of fact could reasonably infer that the employer is dissembling to cover up a discriminatory purpose.

In <u>Reeves</u>, the employer contended that plaintiff had been fired for "shoddy record keeping." In response, plaintiff came forward with what the Court described as "a substantial showing that respondent's explanation was false." <u>Williams v. Raytheon, Co.</u>, 220 F.3d 16 (1st Cir. 2000) (citing <u>Reeves</u>, 530 U.S. at 144-51). Plaintiff offered specific evidence that he had properly maintained attendance records and that he was not responsible for failure to discipline late and absent employees. <u>Id.</u> Therefore, the Court held that the evidence sufficed to find that the employer's asserted justification was false, permitting the jury to conclude that the employer had unlawfully discriminated. <u>Id.</u>

Contrary to <u>Reeves</u>, Plaintiff has made no showing that the proffered nondiscriminatory reason is false nor has she provided any evidence that contradicts the explanation provided by the Defendants. Her allegations of mendacity rest exclusively upon a contradiction between the proffered nondiscriminatory reason and the "lack of work" reason provided in the unemployment benefits document. Although there is no abundant documentary evidence in support of the nondiscriminatory reason for Plaintiff's termination, there is undisputed evidence of her "insubordination and lack of acknowledgement of the new managerial configuration." This evidence, in conjunction with Claudio and Diaz's testimony that there was no scarcity of work at FPVG, only reveals that FPVG provided an inaccurate answer in the unemployment benefits document. However, the apparent contradiction does not directly affect the veracity of the nondiscriminatory reason.

And even if, drawing all reasonable inferences in Plaintiff's favor, it is assumed that Defendants' explanation is unworthy of credence due to this alleged contradiction, it would not be one of those circumstances from which a trier of fact could reasonably infer that the employer is dissembling to cover up a discriminatory purpose, as stated in Reeves. At best, it could only create "a weak issue of fact as to whether the employer's reason was untrue" in light of independent evidence that no discrimination had occurred. Reeves, 530 U.S. at 148. This weak issue of fact together with one stray remark cannot be considered as minimally sufficient evidence from which a jury could infer that the proffered reason for firing the employee was pretextual, and that the decision was made because of discriminatory animus.

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED** as to the gender discrimination cause of action. Plaintiff's discrimination claim is therefore **DISMISSED with prejudice.**

*Title VII's Retaliation Claim*

Defendants assert that Plaintiff does not indicate in her complaint the facts that support her retaliation claim, nor does she make reference to the alleged protected conduct, if any. Docket # 28-10, p. 24. They further contend that Plaintiff did not satisfy the first prong of the prima facie case since "there are no indications on the record that Plaintiff engaged in any form of protected conduct." Id. at p. 26.

Plaintiff mounts no defense whatsoever (not even an argument in passing) to defendants' contentions regarding the retaliation claim. In fact, Plaintiff's motion in opposition and surreply are devoid of *any* discussion and supporting authorities, see D.P.R. Civ. R. 7(a), on this front. See Dockets # 33 and 49. Pursuant to this circuit's well-

established "'raise-or-waive' rule," <u>Rocafort v. IBM Corp.</u>, 334 F.3d 115, 121 (1st Cir. 2003), which "[a]pplies with equal force to situations where a plaintiff properly raises an issue in his complaint, but then fails to adequately address it as part of his summary judgment argument[,]" <u>id.</u> (citing <u>Grenier v. Cyanamid Plastics, Inc.</u>, 70 F.3d 667, 678 (1st Cir. 1995)), Plaintiff's failure to proffer a defense is tantamount to waiver. Thus, Defendants' motion for summary judgment is **GRANTED** as to this unopposed cause of action. Plaintiff's retaliation claim is therefore **DISMISSED with prejudice**.

*Supplemental jurisdiction claims*

Finally, defendants argue that this court should refrain from entertaining Plaintiffs' state law claims.  Plaintiff has failed to provide an argument against this contention. Recently, in <u>Redondo Const. Corp. v. Izquierdo</u>, 662 F.3d 42, 49 (1st Cir. 2011), the First Circuit recapitulated the well settled rule that "[i]f the federal claims are dismissed before trial, . . . . the state claims should be dismissed as well." <u>Id.</u> (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726, (1966)). It reminded, however, that such general principle is no "mandatory rule to be applied inflexibly in all cases[,]" <u>id.</u> (citation omitted), punctuating that "[d]istrict court[s] must exercise 'informed discretion' when deciding whether to exercise supplemental jurisdiction over state law claims." <u>Id.</u> (quoting <u>Roche v. John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 256-57 (1st Cir. 1996)). Such determination implicates a weighing of several factors: to wit, comity, judicial economy, convenience, and fairness. <u>Id.</u> (citations omitted). Having evaluated the foregoing factors, the Court declines to exercise supplemental jurisdiction in this case and notes that comity will be served by permitting the Commonwealth courts to resolve such issues of local concern.

For the reasons stated, Defendants motion for summary judgment is **GRANTED**. Plaintiffs' federal claims are therefore **DISMISSED with prejudice**; and their state law claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of February, 2013.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge